hPER CURIAM*
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Pierre F. Gaudin, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension.[1]
UNDERLYING FACTS
On April 8, 1999, respondent was charged by bill of information in the United States District Court for the Eastern District of Louisiana with one count of making and subscribing a false tax return, a felony, in violation of 26 U.S.C. § 7206(1).[2] On May 12, 1999, respondent entered a plea of guilty to the charge.
The factual basis accompanying the plea indicated that if the matter had proceeded to trial, the government would have proven that respondent filed a 1992 |2tax return dated April 14, 1993, which reported Schedule C gross receipts of $16,921. The government indicated that during the relevant period, respondent worked as a contract attorney for his father’s law firm, Gaudin & Gaudin. During 1992, checks made payable to respondent and to “cash” totaling $32,982 were drawn on the firm’s business accounts and were deposited into respondent’s personal accounts. Another $31,443 in checks, mostly payable to “cash,” were drawn on the firm’s business accounts but were not deposited into' respondent’s personal accounts. In addition, the government indicated that current and former employees of Gaudin & Gaudin would testify that they endorsed and negotiated checks made payable to “cash” that were provided to them by respondent, and that they returned the cash to him. Checks cashed in this manner totaled $17,865 during 1992. The government further indicated that it would provide the testimony of an expert witness from the Internal Revenue Service, who would testify respondent received a total of $82,290 from his work as a contract attorney for Gaudin & Gaudin which should have been reported as Schedule C gross receipts. Finally, the government indicated it would produce evidence that respondent submitted an amended return for the 1992 tax year, dated July 4, 1998, on which he reported Schedule C gross receipts of $87,650.
The district court accepted respondent’s guilty plea on May 12, 1999. On August 4, 1999, respondent was placed on supervised probation for a period of five years and ordered to pay a $10,000 fine. On August 9, 1999, respondent was suspended from practice before the United States District Court for the Eastern District of Louisiana based on his conviction. On October 8, 1999, the United States Court of Appeals *765 for the Fifth Circuit likewise suspended respondent from the practice of law in that court.
| .DISCIPLINARY PROCEEDINGS

Formal Charges

After respondent entered his guilty plea, the ODC filed a motion in this court, seeking to place respondent on interim suspension pursuant to Supreme Court Rule XIX, § 19(C). On February 2, 2000, we ordered that respondent be suspended from the practice of law on an interim basis, and ordered that necessary disciplinary proceedings be commenced. In re: Gaudin, 99-3147 (La.2/2/00), 759 So.2d 758.
Thereafter, the ODC filed one count of formal charges against respondent, alleging that he was convicted of a serious crime which adversely reflects upon his moral fitness to practice law, in violation of Rule 8.4(b) of the Rules of Professional Conduct. Respondent subsequently answered the formal charges and denied that the crime of which he was convicted is a serious crime which adversely reflects upon his moral fitness to practice law.

Formal Hearing

At the formal hearing, the ODC called no witnesses, but introduced the record of respondent’s. underlying federal criminal conviction, including the bill of information, the factual basis for respondent’s guilty plea, and the judgment and probation/commitment order.
Respondent testified on his own behalf. According to respondent, out of the $32,982 in Gaudin & Gaudin funds he deposited in his personal account in 1992, only $16,921 represented income.[3] Respondent testified the remaining $16,061 deposited into his personal checking account represented reimbursement for law firm related business expenses (i.e., travel, dining, etc.). According to respondent, he never [ .received any tax documents from Gaudin •■& Gaudin while employed there, but instead calculated his income based on his own bank records and a handwritten list of business expenses he kept on a legal pad.
As to the remaining $49,308 of unreported income) which consisted of checks payable to “cash” drawn by respondent on the law firm’s accounts, respondent admitted that he endorsed these checks personally or had an office staffer endorse and cash them at his direction. However, respondent denied ever using the funds for his personal use. Rather, he stated that, when he received the cash, he gave it to the office manager, Kenneth Villane, who used it to. provide monetary medical reimbursements and living expenses, prior to settlement, to the firm’s personal injury clients. Respondent claimed the firm had to provide expenses to these clients in cash because the clients, who lacked driver’s licenses or other means of identification, were unable to cash checks at a banking institution. Respondent admitted there was no record of the clients to which these funds were given, due to the firm’s lack of proper bookkeeping procedures.
According to respondent, he did not learn this ,$49,308 was attributed as income to him until 1997, after the Internal Revenue Service conducted an audit of his father, Pierre Gaudin, Sr. In connection with the audit, Mr. Villane prepared 1099 forms for the entire office staff, purportedly with the intent of lowering the tax liability of respondent’s father. At some point during the audit, allegedly unbeknownst to respondent and his father, Mr. Villane provided the Internal Revenue Service with *766 the 1099 forms, one of which indicated respondent had been paid substantially more than respondent had reported on his personal return. Respondent asserted that he never received the 1099 form from Mr. Villane, possibly because Mr. Villane died shortly after preparing it.
| ¡¡Respondent conceded that he pled guilty to the subsequent tax charges. However, he insisted he was not guilty, and testified he pled guilty only because he was embarrassed, confused and sought to protect his reputation and that of his family-

Hearing Committee Recommendation

The hearing committee concluded respondent violated the professional rules as charged, but the injury to the public or the administration of justice was minor. Relying on the presence of several mitigating factors and jurisprudence from this court, the committee concluded a one-year suspension, with credit for time served under the interim suspension and with all remaining time deferred, subject to a one-year period of supervised probation with conditions, to be an appropriate sanction. The ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board determined respondent violated the professional rules as charged, and, unlike the committee, concluded there was actual injury, albeit minimal, to the public fisc, and injury to the reputation of the legal profession. It concluded respondent’s conduct was negligent “to the point that he should have known it was wrong, even if unintentional.” Agreeing with the ODC, the board found the hearing committee erred in failing to find respondent neglected to take reasonable steps to keep track of the financial aspects of his law practice. Moreover, the board found respondent’s reliance on others in the law office to handle his financial affairs was .an insufficient excuse for his negligent conduct. As evidence, it noted respondent was unable to properly account for over $65,000 in client advances and other office expenses, which was to the detriment of the bottom line of lathe law office, with no explanation other than that measures were not taken to post the expenses to clients’ accounts.
Addressing the issue of sanctions, the board recognized several mitigating factors, namely absence of prior discipline, full and free disclosure and cooperation in the disciplinary process, good character and reputation," imposition of other penalties and sanctions (criminal sentence, over $40,000 in monetary consequences, and this court’s interim suspension order), and remorse. Applying the recent case of In re: Pardue, 98-3017 (La.3/26/99), 731 So.2d 224, the board recommended that respondent be suspended from the practice of law for a period of eighteen months, with six months deferred and with credit for time served on his interim suspension. It further recommended respondent be placed on supervised probation for a period of one year with conditions.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board. However, this court ordered briefing and oral argument in the matter in accordance with Supreme Court Rule XIX, § 11(G)(1)(a).
DISCUSSION
Respondent’s primary defense, both before the hearing committee and disciplinary board and in this court, has been to assert he is not guilty of the crime of which he was convicted. Insofar as the hearing committee and disciplinary board entertained this argument and sought to revisit the facts of respondent’s conviction, they fell into error.
*767 It is well settled that when an attorney , has been convicted of a crime, the sole issue to be decided in a subsequent disciplinary proceeding is whether the crime warrants discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E). |7While the court may consider the circumstances of the offense, as well as any aggravating and mitigating circumstances, in determining the extent to which the crime warrants discipline, a respondent may not argue facts which are inconsistent with the essential elements of the crime of which he was convicted. Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). Simply put, a respondent cannot seek to try again the issue of guilt, after he has been convicted. Louisiana State Bar Ass’n v. O’Halloran, 412 So.2d 523 (La.1982). Therefore, despite respondent’s assertion that he is in fact not guilty of willfully making and filing a false tax return under 26 U.S.C. § 7206(1), his guilty plea is conclusive evidence of a violation of that statute for the purpose of these disciplinary proceedings.[4]
We have held that a violation of 26 U.S.C. § 7206(1) is a serious crime for purposes of Rule 8.4 of the Rules of Professional Conduct. Pardue, 731 So.2d at 227. The crime of willfully making and filing a false tax return evidences moral turpitude, although it is generally not considered as serious as the crime of tax evasion. Compare Louisiana State Bar Ass’n v. Ponder, 340 So.2d 134 (La.1976), with O’Halloran, supra. Nonetheless, the baseline sanction for a conviction involving dishonesty, which would include a violation of 26 U.S.C. § 7206(1), is a suspension from the practice of law for a period of at least two to three years. See In re: Huddleston, 595 So.2d 1141, 1147 (La.1992); see also Pardue, supra.[5]
|sThe record reveals the existence of several mitigating factors in this case, including respondent’s lack of a prior disciplinary record, his good character and reputation, and his full and free disclosure both to the government and to the disciplinary authorities. We further note that respondent’s misconduct does not involve the breach of any duties to clients, nor did it cause any damage to clients. We do not identify any aggravating circumstances from the record.
Based on these factors, we conclude some deviation from the baseline sanction of a two-year to three-year suspension is justified. Accordingly, we will suspend re *768 spondent from the practice of law for a period of eighteen months, retroactive to the date of his interim suspension.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Pierre F. Gaudin, Jr. be suspended from the practice of law in Louisiana for a period of eighteen months, retroactive to February 2, 2000, the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.
JOHNSON, J., dissents and would impose a harsher penalty.
VICTORY, J., dissents and would impose a harsher sanction.
TRAYLOR, J., dissents and would impose a harsher sanction.

 Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

. On February 2, 2000, pursuant to a motion filed by the ODC, this court ordered that respondent be placed on interim suspension. In re: Gaudin, 99-3147 (La.2/2/00), 759 So.2d 758.

. 26 U.S.C. § 7206(1) provides:
Any person who—
(1) Declaration under penalties of perjury. — Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

. According to respondent, he worked at Gau-din & Gaudin only on a part-time basis. He spent the majority of his time working as a judicial law clerk for a state appellate court.

. We contrast respondent's arguments with those of the attorney in Pardue. In that case, the attorney acknowledged his guilt, but argued there were mitigating factors which should be considered, such as his health problems and those of his wife. By contrast, respondent in the instant case has consistently refused to acknowledge his guilt. Rather than setting forth mitigating factors, respondent seeks to retry his criminal conviction by asserting his innocence. Such an argument is clearly impermissible under our court's jurisprudence.

. In Ponder, we suspended an attorney for six months based on his conviction of willfully making and filing a false return in violation of 26 U.S.C. § 7206(1). In our opinion, we noted that because of the attorney's good reputation, "the harshest penalty is not appropriate in this case.” Ponder, 340 So.2d at 148. While we do not disavow our holding in Ponder, we note that the recent jurisprudence of this court, as exemplified by Pardue and Hud-dleston, has generally imposed longer sanctions in disciplinary cases arising from felony violations of the tax laws. Indeed, with respect to convictions involving misdemeanor failure to file returns in violation of 26 U.S.C. § 7203, we have imposed actual suspensions of six months or longer. See, e.g., In re: Stout, 97-0217 (La.5/20/97), 694 So.2d 908 (eighteen-month suspension, with six months deferred, followed by a two-year period of probation); In re: Huckaby, 96-2643 (La.5/20/97), 694 So.2d 906 (one-year suspension, with six months deferred, followed by a two-year period of probation).